# Lloyd v. Lloyd

*Andrew B. Brown,* for plaintiff.
*Richard S. Friedman,* for defendant.

RENN, *J.,* February 3, 2005—This matter is before the court in the context of pretrial custody proceedings. Mother, Julia M. Lloyd, has filed a request to obtain the expert reports (presumably in the form of a "custody evaluation") of Father's expert, whom Father, Charles Joseph Lloyd, does not intend to call as a witness. We will grant the request.

## FACTUAL AND PROCEDURAL BACKGROUND

From the record and from arguments heard, we determine the following facts. On July 8, 2004, Charles Joseph Lloyd filed a petition for modification from a previous court order entered on August 14, 1998. The parties attended a conciliation conference which resulted in an interim order for custody, pending trial on August 19, 2004. Father requested psychological and drug evaluations of all relevant parties, including the

children, Julia M. Lloyd's paramour, and Father's wife. Mother attended all sessions necessary to complete the report. It is reported that Mother's paramour refused to cooperate with the evaluations.

Father listed Dr. Shienvold as an expert witness on Father's pretrial memorandum, which was submitted to the court on or about September 22, 2004, stating the following therein:

"Counsel for Father suggested that [sic] the custody conciliation that a custody evaluation would be appropriate. Mother, through counsel, refused this request. Father thereafter demanded a custody evaluation and home study be performed by Arnold Shienvold Ph.D., a well recognized expert. The evaluation and home study have not yet begun, and it is felt that Dr. Shienvold's evaluation *is necessary to make a determination as to the best interests of the children.*" (emphasis added)

After being notified by Father, on or about January 12, 2005, that Dr. Shienvold would not be testifying and the report would not be utilized by Father at trial, Mother filed a petition for special relief on January 19, 2005, requesting a copy of the report that was completed by Dr. Shienvold.

## ISSUES

Can a party to custody litigation be compelled to disclose or make available for inspection by an opponent, a report made, or information and data collected by an expert hired by that party if the expert will not be used as a witness at trial?

## DISCUSSION

### *General Observations*

### Discovery in Custody Cases Generally

It has long been the general rule that no discovery is permitted in "simple" custody matters, absent leave of court. Pa.R.C.P. 1930.5. However, motions for special relief and requests for examination of individuals are provided for specifically in the rules for custody matters. Pa.R.C.P. 1915.8 and 1915.13. We have previously held that issues concerning a parent's mental health, as well as a child's, is a proper area of inquiry in custody litigation. See *Abram v. Abram,* 116 York 129 (2003).

We conclude, therefore, that the issue presented by Mother in her petition for special relief is properly before us to request discovery in this case.

### Custody Litigation—Best Interests of Child

In any custody case, we are charged with determining the best interests of the child involved. In order to do that, we are required to ensure that a complete record has been developed to enable us to consider the many factors which we are required to consider in determining the best interests of the child. *T.B. v. L.R.M.,* 753 A.2d 873 (Pa. Super. 2000):

"Thus, we emphasize, a full inquiry is essential to determine what serves a child's best interest; all pertinent facts surrounding the contesting parties must be fully explored and developed. . . . The paramount focus is the best interest of the child involved, not the respec-

tive rights of the contesting parties." *Id.* at 890. (citations omitted)

Competing with these principles are individual interests in keeping matters such as medical treatment and psychological counseling private. See *Abram v. Abram,* 116 York 129 (2003).

## *Limitations on Discovery*

Discovery in custody cases is limited by Rules of Civil Procedure which are applicable to custody actions. See Pa.R.C.P. 1930.5(a), 1915.8 and Pa.R.C.P. 4001.

Co-existing with these rules are statutory privileges which limit the availability of information which might be discovered or used at trial (see, for instance, the psychiatrist-patient privilege at 42 Pa.C.S. §5944), and protections afforded to attorney work product, generally embodied in Pa.R.C.P. 4003.3. We note at the outset that we have concluded, for the purposes of this analysis, that the facts known and opinions held by Father's expert were "acquired or developed in anticipation of litigation or for trial," thus triggering the application of Rule 4003.5, and are not matters which came to the attention of the expert during the course of treatment of any of the parties involved in this case.

Father rests his argument on a further limitation placed upon discovery of expert material by Pa.R.C.P. 4003.5:

"(3) A party may not discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of

litigation or preparation for trial, and who is not expected to be called as a witness at trial, except a medical expert as provided in Rule 4010(b) or except on order of court as to any other expert upon a showing of exceptional circumstances . . . ."

First, we note that the general provisions of Rule 4003.5 provide for discovery of the identity of an expert, and facts known and opinions held by that expert, who is *expected to be called as a witness* at trial. Father noted in his pretrial memorandum, quite emphatically, we might add, that he intended to call his expert as a witness at trial. He placed Mother on notice of that intention, and Mother relied on that in forgoing her own expert. We noted Dr. Shienvold as an expert witness in our pretrial order.

We conclude, therefore, that listing Dr. Shienvold as an expert "witness" constitutes an "expectation" that the expert will be used as a witness at trial, and, accordingly, the limitation on discovery imposed by Rule 4003.5 is not applicable, and discovery of "facts known and opinions held" by the expert is permitted.

## Status of an Expert in Custody Litigation

Experts in custody cases are somewhat different than experts in, for instance, an auto accident case, in that the expert is necessarily made known to the other side early on in the case so that the other party can attend appointments for assessments which are conducted by the expert. Experts can be utilized on the motion of either party, or on the court's own motion. Pa.R.C.P.

1915.8. In the present case, our interim order for custody pending trial set forth the time limits for requesting an expert and directed all parties to cooperate in obtaining the evaluations. It allocated the costs of the evaluations between the parties. If parties do not cooperate with the evaluations, sanctions may be imposed by the court. Pa.R.C.P. 1915.8(g). In other cases, experts may be hired to advise and assist counsel in determining whether a client has a viable cause of action, to investigate pretrial matters, or to assist during the course of a trial, all of which may be done without court order, or even without the knowledge of the other side. Not so in custody litigation.

It may be argued that Rule 1915.8(c) only permits a report prepared at the request of a party to be delivered only to that party:

"(c) Where the expert evaluation is obtained upon motion of a party, the expert shall deliver *to that party* a detailed written report setting out the findings, results of all tests made, diagnosis and conclusions . . . ." (emphasis added)

However, the rule is silent about delivery to the *opposing* party. See *Durakovich v. Psychological Associates of Pennsylvania P.C.,* 2002 SU 05184-01 (York Cty. 2003, Blackwell, J.). The very next section requires that "[e]ach expert's report shall be filed and/or served . . . (2) within 60 days after full payment of the expert fee(s) where one or both parties are directed to pay." Thus, the rule appears to contemplate that every expert's report will be filed in a custody case, thus making it available to all parties.

Father argues that the exception to Rule 4003.5(3) regarding medical examinations is not applicable to the present case. We disagree. As the above discussion should illustrate, an expert in a child custody case, regardless of who "hires" the expert, is very similar to an "independent" medical examiner, which is the subject of Pa.R.C.P. 4010. That rule defines an "examiner" as "a licensed physician . . . or licensed psychologist." We note that a psychiatrist is, by definition, a licensed "physician." Rule 4010 would appear to apply to child custody cases by its own terms, since the rule excludes the right to counsel at such exams and the right to an audio or stenographic record of the exam from application in child custody cases. Pa.R.C.P. 4010(a)(4)(ii), and (a)(5)(ii).

We conclude that an expert, whether hired by a particular party or appointed by the court in custody litigation, is an expert subject to Rule 4010, and, as such, materials including a "detailed written report of the examiner setting out the examiner's findings, including results of all tests made, diagnosis and conclusions" are discoverable by a party as provided in that rule. This conclusion is reached regardless of the status of the expert as a witness at trial.

## Attorney Work Product

As we noted before, the concept of attorney work product may also bar discovery of expert material. The attorney work product doctrine actually provides broader protection in cases of this sort than the attorney-client privilege. "It promotes the adversary system

by enabling attorneys to prepare cases without fear that their work product will be used against their clients." (citations omitted) *Commonwealth v. Noll,* 443 Pa. Super. 602, 608, 662 A.2d 1123, 1126 (1995) (prohibiting the Commonwealth from using an expert hired by the attorney for the defendant):

"As attorneys must often rely on the assistance of investigators and other agents in the compilation of materials necessary for trial, the doctrine protects materials prepared by agents for the attorney, as well as those prepared by the attorney himself." *Id.* (citations omitted)

Thus, the Superior Court held that, in a criminal case arising from an auto accident, the work product doctrine barred the Commonwealth's use of an expert hired by the defense. However, as we observed before, an expert in custody litigation is in a different position than one hired in an auto accident case. The case at bar is therefore distinguishable from the situation in which the expert was hired in *Noll.* See the discussion generally in *Thomas v. Germantown Hospital and Medical Center,* 16 D.&C.4th 247 (Philadelphia Cty. 1992).

### Psychiatrist-Patient Privilege

The only other reason such material might be protected from discovery would be the psychiatrist-patient privilege, 42 Pa.C.S. §5944. The applicability of this privilege was extensively discussed by the Honorable Penny L. Blackwell in her opinion in *Durakovich v. Psychological Associates of Pennsylvania P.C.,* 2002 SU 051 84-01 (2003). That case arose as a claim of

professional malpractice resulting from the father hiring an expert to do a custody evaluation and to "potentially serve as an expert witness." A request was made by the father for the expert to also do an evaluation of the mother. The expert did so, then released the results of the evaluation of the mother to mother's counsel, without the father's consent.

In granting the defendants' preliminary objections to the cause of action, Judge Blackwell opined that neither the father, who hired the expert, nor the mother, was the "client" of the psychologist, and, therefore, neither the statutory privilege, nor the State Board of Psychology Code of Ethics (49 Pa. Code §41.61) prohibit the disclosure of mother's report to the attorney for mother:

"In *Adoption of Embick,* 351 Pa. Super. 491, 506 A.2d 455 (1986), the Superior Court recognized that the purpose of the psychologist-patient privilege is 'to encourage people to seek professional help for their mental or emotional problems, and that [such] purpose is best accomplished when people in need of psycho-therapeutic treatment know that what they tell their therapist during treatment will not be disclosed to anyone.' . . .

"The court noted that the parents 'were not seeking treatment, or counseling, or advice for any mental or emotional problems,' but that, instead, the parents went to see the psychologist because they were asked to do so by the agency and for the limited purpose of examination. . . ." *Durakovich, id.,* at 8, 9. (citations omitted) Similarly, in the present case, Father was not seeking out the expert for treatment. The expert was sought spe-

cifically for the purpose of litigation, which, for litigation purposes, places the expert in the category of those governed by the requirements of discovery under Rule 4010.

## CONCLUSION

We hold that all of the facts known and opinions held by Father's expert may be discovered by Mother pursuant to Pa.R.C.P. 4010. An order will be entered in conformance with this opinion.

## ORDER PERMITTING DISCOVERY

And now, February 3, 2005, upon consideration of the request for relief filed by plaintiff, the request is granted. Discovery of detailed written reports, all finding results of all tests made, diagnoses and conclusions of Dr. Shienvold is hereby permitted. The parties shall expeditiously comply with this order so as to not delay trial.

Copies of this opinion and order shall be sent to counsel for the parties.